**STATE of Missouri, Plaintiff–Respondent,**

v.

**Ben C. SITTON, Jr., Defendant–Appellant.**

**No. SD 30237.**

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 13, 2010.

Motion for Rehearing or Transfer Denied Oct. 6, 2010.

Application for Transfer Denied Nov. 16, 2010.

Nancy A. McKerrow, Columbia, for Appellant.

Chris Koster, Atty. General, Terrence M. Messonnier, Jefferson City, for Respondent.

NANCY STEFFEN RAHMEYER, Presiding Judge.

Ben C. Sitton, Jr. ("Appellant") was charged with and, following a bench trial, convicted of resisting or interfering with arrest in violation of section 575.150.[1] The charges stemmed from a chase by the police when Appellant was on a dirt bike. Appellant brings two points on appeal: (1)

---

**1.** All references to statutes are to RSMo Cum. Supp.2005, and all rule references are to Missouri Court Rules (2010), unless otherwise specified. Amendments to section 575.150 were made in 2009. Appellant violated section 575.150 in 2007, when the 2005 version of section 575.150 was in place. The 2009 version adds provisions relating to the penalties for violating the section that are not applicable in this case.

he claims prejudice when the trial court amended the Information after the trial but before the court entered judgment, and (2) he claims there is insufficient evidence to support the finding that his actions created a substantial risk of serious physical injury to any person. We find no error and affirm the judgment of the trial court.

█ In reviewing a claim of insufficient evidence, we consider the record in the light most favorable to the judgment, taking as true the evidence and all logical inferences that support a finding of guilt, and ignoring the evidence and inferences that do not support a finding of guilt. *State v. Niederstadt*, 66 S.W.3d 12, 14 (Mo. banc 2002). The evidence, viewed in the light most favorable to the judgment, shows that on August 18, 2007, a police officer observed Appellant driving a dirt bike at what he estimated to be forty to forty-five miles per hour in a residential neighborhood. The police officer activated emergency lights and sirens and signaled Appellant to stop the dirt bike, but Appellant did not do so. Instead, Appellant fled, driving "probably above sixty miles an hour" at one point in the residential neighborhood. Along the way, Appellant ran through a stop sign without decelerating his motor and lost control of the dirt bike twice. When Appellant was ejected from the dirt bike the second time he lost control, he narrowly missed, by inches, careening into a street sign, and a utility pole, by three or four feet. The bike was so damaged that it was leaking fluids.

After being thrown off the bike, Appellant fled the officer on foot, running into a female acquaintance's apartment. The officer followed, with his gun drawn but held low at his side. The acquaintance, a fe-

male who was holding a baby, then stood outside the apartment's entrance and questioned the officer as to why the officer was chasing Appellant, which impeded the officer momentarily. Once the officer gained access to the apartment, Appellant was nowhere to be found as he had escaped out a back door. Appellant was charged by Information with the "felony of resisting arrest" for fleeing in "a manner that created a substantial risk of serious physical injury or death to any persons[.]" Appellant's identity as the individual who fled from the officer was stipulated to at trial. The officer who arrested Appellant testified at the trial that his initial intent was to stop Appellant to talk to him about speeding in a residential neighborhood.

The parties discussed a possible amendment to the Information in a post-trial discussion. Defense counsel suggested to the court that he expected the prosecution "to actually catch [any defect with the wording of the Information] and correct it. But it is their choice and it was their—you know, the State—that is the State's burden to get their [I]nformation correct." The State responded that "it's well within the Court's power to amend to the-[Information]-by interlineation to the evidence."[2] The next mention of any amendment is from the docket sheet where, one week after trial, an entry reads: "The Court grants leave to the State to amend [I]nformation changing 'arrest' to 'stop' to conform with the evidence." Immediately after that entry is: "The court finds defendant guilty of the class D felony of resisting arrest beyond reasonable doubt."

█ Appellant concedes that the court amended the Information and, in his first point on appeal, contends the amendment

**2.** The use of an oral motion to amend is permissible. *State v. Armstrong,* 968 S.W.2d 154, 157 (Mo.App. S.D.1998).

prejudiced him by depriving him of a defense. In Appellant's view, a defendant could only be found guilty of resisting arrest if he resisted an actual arrest. Because the officer in this case stated he initially intended only to stop Appellant and discuss his driving speed with him, Appellant was not resisting an arrest. Appellant claims the amendment to the Information that changed the word "arrest" to "stop" deprived him of the defense that he was not resisting an arrest.

 "The purpose of an information is to inform an accused of the charges against him so that he may prepare an adequate defense and to prevent retrial on the same charges in case of acquittal." *State v. Sanders*, 871 S.W.2d 454, 459 (Mo. App. W.D.1993). The State may file an amended charge "at any time before [the] verdict" as long as "[n]o additional or different offense is charged" and the amendment does not prejudice a "defendant's substantial rights[.]" Rule 23.08. A decision permitting the State to file an amended charging document is reviewed for abuse of discretion. *State v. Smith*, 242 S.W.3d 735, 742 (Mo.App. S.D.2007). A trial court abuses its discretion when it hands down a ruling so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration.

 It is not an abuse of discretion for a trial court to permit an amendment that simply sets forth a different way of committing the same offense. When a statute provides alternative methods for committing the same offense, an amendment that changes the method by which the offense was committed does not charge a different offense. *State v. Folson*, 197 S.W.3d 658, 661 (Mo.App. W.D.2006). The test for prejudice when an amendment is permitted is whether or not a planned defense or defense evidence is still applicable before and after the amendment. *State v. McGinness*, 215 S.W.3d 322, 324 (Mo.App. E.D.2007).

Section 575.150 creates the *"crime* of resisting or interfering with arrest, detention, or stop[.]" Section 575.150.1 (emphasis added). The crime of felony "resisting or interfering with arrest" consists of the following elements:

1) a law enforcement officer is making or attempting to make a lawful arrest or stop, 2) the defendant knew or reasonably should have known of the law enforcement officer's attempt to arrest or stop, 3) the defendant resists arrest by fleeing; 4) the defendant resisted for the purpose of thwarting the law enforcement officer's attempt to arrest or stop by using or threatening the use of violence or physical force or by fleeing, and 5) the defendant fled in a manner that created a substantial risk of serious physical injury or death to another.

*State v. Daws*, 311 S.W.3d 806, 808–09 (Mo. banc 2010).

Appellant's argument that one must be resisting a valid arrest, not merely a citation for a minor traffic violation, to be found guilty of resisting arrest was a valid defense under a previous version of section 575.150.[3] The version of section 575.150

**3.** *See State v. Wanner*, 751 S.W.2d 789, 791 (Mo.App. E.D.1988) ("The officer testified that he *initially sought to stop appellant only to warn him about his driving habits.* When [the officer] first observed the appellant, he never intended to effectuate an arrest. Therefore, the appellant could not have resisted an arrest when he fled from the officer.") (emphasis in original); *State v. Long*, 802 S.W.2d 573, 575–76 (Mo.App. S.D.1991) ("The gravaman of the offense [in section 575.150] is resisting an arrest, not flight from a law enforcement officer.... [T]he offense of resisting arrest cannot occur unless a law enforcement officer actually contemplates an arrest."). Both cases

applicable to Appellant's violation, however, creates multiple ways of committing the same statutory offense. The offense of resisting arrest now includes "resisting a stop" as a method of committing the same offense. Therefore, Appellant was not prejudiced since his defense, that he was not resisting an arrest, is not a defense to the crime section 575.150 creates: resisting or interfering with a lawful arrest or stop.[4] Both Appellant's defenses and evidence were as available and applicable after the amendment as they were before. Point I is denied.

■ In Appellant's second point on appeal, he argues that the trial court erred in finding him guilty of the class D felony of resisting arrest because the State failed to introduce sufficient evidence to support a finding that he put anyone in substantial risk of serious physical injury. The import of such arguments is that if Appellant's resistance by flight did not create a substantial risk of serious physical injury or death, he would be guilty of only misdemeanor, not felony, resisting or interfering with arrest. Section 575.150.5.

■ When considering sufficiency of evidence claims, our review is limited to determining whether the evidence is sufficient for a reasonable trier of fact to find each element of the crime beyond a reasonable doubt. *Niederstadt*, 66 S.W.3d at 14. In a court-tried criminal case, the findings of the court shall have the force and effect of a jury verdict. Rule 27.01(b). We consider the record in the light most favorable to the judgment, taking as true the evidence and all logical inferences that support a finding of guilt, and ignoring the evidence and inferences that do not support a finding of guilt. *Niederstadt*, 66

S.W.3d at 14. " 'Where different inferences are reasonably deducible from the facts and circumstances of the case, it is for the triers of fact to determine which inference shall be drawn and [this court] may not cast aside their inferences for another of its own choice.' " *State v. Simpson*, 315 S.W.3d 779, 783 (Mo.App. W.D.2010) (quoting *State v. Butler*, 24 S.W.3d 21, 27 (Mo.App. W.D.2000)).

"Serious physical injury" is legislatively defined as a "physical injury that creates a substantial risk of death or that causes serious disfigurement or protracted loss or impairment of the function of any part of the body[.]" Section 556.061(28), RSMo Cum.Supp.2006. We disagree that Appellant did not create a substantial risk of serious physical injury to any person. During a hearing on Appellant's Amended Motion for New Trial, the trial court, in overruling the motion, found that:

> [T]here was evidence beyond a reasonable doubt of a serious risk of injury to a person or persons by the defendant's actions. It was a long, drawn-out chase. Losing control of his motorcycle. Going on to a public street from an alley—blind alley out of control. There were people in the area. Crashing the motorcycle ultimately. Others in the line of an officer's gun barrel impeding the officer. It was a very dangerous situation.

Under our standard of review we give great deference to the trial court's findings and disregard any inferences that are contrary to those findings. The trial court found that Appellant's actions created multiple situations where people were put at substantial risk of serious physical injury. Taking as true all evidence and logical

---

were applying the 1979 version of section 575.150.

4. Appellant actually argued at trial that he was only guilty of a misdemeanor because his conduct created no risk of serious physical injury to any person.

inferences that support the finding of guilt, and ignoring all other evidence and inferences, we cannot say the judgment was based on insufficient evidence. Appellant fled from a police officer first on a dirt bike, then on foot, where he was chased by the officer as he ran into the apartment of an acquaintance who impeded the officer's progress while holding a baby when the officer's gun was drawn. The trial court could have found beyond a reasonable doubt that under section 575.150, Appellant's acts created "a substantial risk of serious physical injury or death to any persons," including a substantial risk to the police officer, Appellant's female acquaintance, and the baby she was holding when she impeded the officer's progress while he had his gun drawn. Point II is denied.

The judgment of the trial court is affirmed.

SCOTT, C.J., concurs in separate opinion.

BATES, J., concurs.

DANIEL E. SCOTT, Chief Judge, concurring.

I concur, perhaps for a slightly different reason as to Count I. Appellant could not have been prejudiced by an amendment which defense counsel stated at trial that he had expected the State to make.