

# Missouri Court of Appeals

## Southern District

### Division One

STATE OF MISSOURI,                    )
                                      )
      Respondent,             )
                                      )
v.                                    )     No. SD35389
                                      )     Filed:  November 20, 2019
OTIS L. LAMBERT,                      )
                                      )
      Appellant.              )

### APPEAL FROM THE CIRCUIT COURT OF RIPLEY COUNTY

Honorable Michael M. Pritchett, Judge

### **AFFIRMED**

Otis L. Lambert ("Lambert") appeals his convictions, following a jury trial, of two counts of statutory sodomy in the first degree, and one count of child molestation in the first degree. Lambert challenges his convictions in one point on appeal. Finding no merit to Lambert's point, we affirm the judgment of the trial court.

### Facts and Procedural Background

We recite the evidence and the reasonable available inferences therefrom in the light most favorable to the verdict. ***State v. Lammers***, 479 S.W.3d 624, 630 (Mo. banc. 2016). We recite other information as necessary for context.

Lambert abused Victim (a child under fourteen years of age at all relevant times) several times between December 5, 2009 and July 5, 2011. Victim's mother died on February 1, 2011, and Victim disclosed the abuse shortly thereafter. At her Child Advocacy Center ("CAC") interview, Victim claimed that the terminal act of abuse occurred before her mother died.

On September 26, 2014, Lambert was charged by felony information with two counts of the unclassified felony of statutory sodomy in the first degree (Counts I and II), pursuant to section 566.062,[1] and one count of the class B felony of child molestation in the first degree (Count III), pursuant to section 566.067. The information asserted Lambert committed these acts against Victim "on or between December 5, 2009 and February 1, 2011."

A jury trial commenced on November 1, 2017. Lambert did not testify and presented no evidence. During the State's case in chief, Victim testified that the terminal incident of abuse occurred after her mother died. Defense counsel did not object.

During defense counsel's cross-examination of Victim, defense counsel adduced four instances of Victim's testimony that the terminal act of abuse occurred after her mother died.

After the State rested its case, it requested to amend the timeline in the information from February 1, 2011 (when Victim's mother died) to July 5, 2011, based on Victim's trial testimony (which was at variance with her CAC interview). Defense counsel *then* (and not before) objected on the basis that "[i]f we had known prior to coming here today that the date range was going to extend from the time that [Victim's] mother died until the date that [Victim] went to Lakeland we may have offered witnesses who were in the house at that time[.]" Nevertheless, defense counsel conceded that "[o]ur defense in this case is that this did not happen. I recognize that there is not a

---

[1] All references to statutes are to RSMo Cum.Supp. 2006, unless otherwise indicated.

defensive alibi or justification being presented." The trial court granted the State's request to expand the date range in the information.

The trial court instructed the jury, including Instructions 6, 8, and 10, all of which contained the language: "First, that on or about December 5, 2009 to July 5, 2011 . . . ."

The jury found Lambert guilty of both counts of statutory sodomy in the first degree (Counts I and II), and guilty of child molestation in the first degree (Count III). The trial court sentenced Lambert to 25 years in prison for each of the two first-degree sodomy convictions, and 15 years in prison on the child molestation conviction, with the sentences to run concurrently.

On November 28, 2017, Lambert filed a "Motion for Judgment of Acquittal Notwithstanding the Verdict or, in the Alternative, Motion for New Trial." Included in the motion were allegations of trial court error for sustaining the State's motion to extend the time period in which the sexual abuse of Victim occurred from February 1, 2011 to July 5, 2011. The trial court overruled the motion. This appeal followed.

In one point on appeal, Lambert asserts the trial court erred in allowing the State to expand the dates charged in each of the counts from the dates charged in the information, and in submitting the verdict directors for each count.

**Standard of Review**

"This Court reviews a trial court's decision to allow an amendment of a charging document for abuse of discretion." ***State v. Seeler***, 316 S.W.3d 920, 925 (Mo. banc 2010). "A trial court abuses its discretion when it hands down a ruling so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration." ***State v. Sitton***, 323 S.W.3d 65, 68 (Mo.App. S.D. 2010).

**Analysis**

Lambert claims that "[t]he trial court erred in allowing the State to expand the dates charged in each of the counts from the dates charged in the information, and in submitting the verdict directors for each count[.]" In support, he argues that "defense counsel had prepared for trial while under the impression that no witnesses would be available because the last time the abuse was alleged to have occurred was *before* [Victim]'s mother died[,]" and that "allowing the State to add the time period *after* [Victim]'s mother died to the verdict directors after it had presented its case-in-chief deprived Mr. Lambert of adequate notice to find potential alibi witnesses and to prepare for trial." (Emphasis in original).

Rule 23.08[2] governs the amendment of an indictment or information:

> Any information may be amended or an information may be substituted for an indictment at any time before verdict or finding if:
>
> (a) No additional or different offense is charged, and
>
> (b) A defendant's substantial rights are not thereby prejudiced.
>
> No such amendment or substitution shall cause delay of a trial unless the court finds that a defendant needs further time to prepare a defense by reason of such amendment or substitution.

As our Supreme Court has indicated, "[t]he purpose of an indictment or information is to inform the accused of charges against him so that he may prepare an adequate defense and to prevent retrial on the same charges in case of an acquittal." ***State v. Rohra***, 545 S.W.3d 344, 347 (Mo. banc 2018) (internal quotation and citation omitted). Thus, where a substituted charging document is filed before the jury's verdict, the issue (as applicable here) is "whether the trial

---

[2] Rule 23.11 provides supplementary guidance on this issue, and directs that "[a]n indictment or information shall not be invalid, nor shall the trial, judgment, or other proceedings on the indictment or information be stayed, because of any defect that does not prejudice the substantial rights of the defendant."

All rule references are to Missouri Court Rules (2019).

court's allowing [the substitution] prejudiced [defendant's] substantial rights." **_Seeler_**, 316 S.W.3d at 926.

Prejudice is not directed at the loss of **_new_** theories of defense and evidence otherwise made (potentially) pertinent by the substituted charging instrument. Rather, its proper focus is whether the **_existing planned defense_**, and the **_evidence already adduced_** (and **_already planned to be adduced_**) in accord therewith, are still effectively operative—*i.e.*, "whether the **planned defense to the original charge <u>still would be available</u>** after the amendment and whether the **defendant's evidence <u>would be applicable</u>** before and after the amendment." **_Id._** (Emphasis added).

Where "[defendant]'s defenses were unavailable under the new information, and the evidence he adduced in cross-examination of the state's witnesses was no longer applicable after the information was substituted, he has been prejudiced." **_Id._** Thus, our appellate courts have indicated that where an amended charging document has the effect of vitiating a defendant's already planned alibi defense—where defendant demonstrates the existence of such defense by substantial evidence[3]—the amendment is generally disallowed.[4]

---

[3] *See* **State v. Cannafax**, 344 S.W.3d 279 n.4 (Mo.App. S.D. 2011) ("it is important to note that an instruction covering a broad period of time may not be given when doing so would nullify an **_alibi defense that is supported by substantial evidence_**.") (internal quotation and citation omitted) (emphasis added); **State v. Carney**, 195 S.W.3d 567, 571 n.7 (Mo.App. S.D. 2006); **State v. Meyers**, 770 S.W.2d 312, 316 (Mo.App. S.D. 1989) ("Time is not the essence of sexual offenses such as rape and deviate sexual intercourse. However, when an alibi defense is presented, time may be of decisive importance although it is not of the essence of the offense. It is established that when a specific date is presented as the date of the alleged crime, an instruction covering a broad period of time may not be given which would nullify an **_alibi defense that is supported by substantial evidence_**.") (internal quotation and citation omitted) (emphasis added).

[4] **State v. Hicks**, 221 S.W.3d 497, 503-05 (Mo.App. W.D. 2007); **State v. Mattic**, 84 S.W.3d 161, 166 (Mo.App W.D. 2002) (directing that counsel's "bare statement" to the trial court was unavailing, and that "'a very strong showing is required to prove abuse of . . . discretion; the party requesting continuance [in light of the State's request to amend information] must show prejudice.'") (quoting **State v. Chambers**, 821 S.W.2d 93, 100-01 (Mo. banc 1994)); **State v. McDowell**, 832 S.W.2d 333, 335 (Mo.App. E.D. 1992) (defendant's failure to challenge information renders subsequent challenges to the information moot); **Cooksey v. Delo**, 94 F.3d 1214, 1218 (8ᵗʰ Cir 1996) (recognizing and applying Missouri law that defendant bears the burden of demonstrating sufficient grounds for denial of subsequent or amended information), *Cf.*, **State v. Middleton**, 998 S.W.2d 520, 526 (Mo. banc 1999) ("the State could [amend information] as of right, *Rule 23.08*[.]") (emphasis in original). We observe contrary *dicta* from the Western District of this Court: "To take advantage of Rule 23.08, **the State** must demonstrate both of the Rule's conjunctive

5

Defense counsel's decisions as to what actions to take in opposition (or not) to a proposed amendment or substitution are generally presumed to be "a matter of trial strategy."[5] Here, defense counsel's theory of the case was that the abuse "did not happen[,]" in that Victim had motive to lie and was not a credible witness—*i.e.*, that Victim blamed Lambert for her mother's death, wanted to escape "poverty," and Victim's accusations against Lambert were not based on truth, but rather upon her personal interests. Here, there is no indication that Lambert's planned defense was in any way prejudiced—rather, as discussed more fully *infra*, the record demonstrates that defense counsel purposefully (and strategically) developed evidence outside of the State's charged timeline in accord with its planned trial strategy, and likewise heavily relied on such evidence in closing argument.

The State's felony information (as operative at the beginning of the jury trial) charged that Lambert's sexual assaults against Victim occurred "on or between November 5, 2009 and February 1, 2011." The terminus of this charging range reflected the date Victim's mother died, pursuant to Victim's disclosures in her CAC interview.

At trial, Victim testified that the last instance of abuse occurred "after my mom died, but I don't really remember how old I was." The prosecutor asked, "It was after your mom died or

---

requirements. It follows that Rule 23.08 is violated if either of the Rule's conjunctive obligations is not satisfied." *State v. Nelson*, 505 S.W.3d 437, 442 n.4 (Mo.App. W.D. 2016) (emphasis added). In support of this *dicta*, *Nelson* relies on *State v. Thompson*, 292 S.W.2d 617 (Mo. 1965). We agree with *Nelson* insofar as *Thompson*'s treatment of Rule 23.08 as conjunctive (*i.e.*, that an amendment must (1) contain no additional or different offense, *and* (2) not prejudice defendant's substantial rights). However, we discern no treatment in *Thompson* to the effect that the State bears this subjunctive burden. No other case relies on *Thompson* for *Nelson*'s premise, and no case has relied on *Nelson* for its *dicta*. As a matter of practice, we do not discern how the State would demonstrate the *absence* of a lost-alibi defense (at the time of pre-verdict amendment) by *substantial evidence*, and therefore decline to follow *Nelson*.

[5] *Tucker v. State*, 468 S.W.3d 468, 474 (Mo.App. E.D. 2015); *see McArthur v. State,* 428 S.W.3d 774, 780 (Mo.App. E.D. 2014).

before?" Victim answered," "After." Defense counsel did not object to this testimony as being outside the date range of the information.

Well before the State requested to amend the information, defense counsel adduced further testimony from Victim in this vein on cross examination. Defense counsel obtained Victim's testimony that the last charged act of abuse occurred when Victim was "[t]welve or thirteen. I don't know. It was after Mom died." The following colloquy then occurred:

> [Defense:] Your mom, she had some breathing problems, didn't she -- it was after you mom died, is that what you said?
>
> [Victim:] Yes.
>
> [Defense:] So today you are saying this happened after your mother died?
>
> [Victim:] Yes. That I remember yes.
>
> [Defense:] Okay. This incident happened after your mother died?
>
> [Victim:] Yes.

Summarily, defense counsel adduced—in quick succession—four repetitions of the same information-deviating testimony. This is not indicia of defense counsel's intention to confine the State (or the evidence) to the boundaries of the then-operative charging information, but rather of defense counsel's effort to strategically focus the jury's attention on this testimony (extrinsic to the timeline of the charging information) and the nature of its inconsistency. As this Court has indicated, "a party cannot complain on appeal of any alleged error which, by his or her own conduct at trial, he or she joined in or acquiesced to." *State v. Barnes*, 583 S.W.3d 458, 462 (Mo.App. S.D. 2019) (internal quotation and citation omitted).[6]

In closing argument, defense counsel premised its defense on Victim's lack of credibility, and as to her motives to lie: "[Y]ou all have three counts that you get to decide, but they are all

---

[6] *See* **State v. Campbell**, 122 S.W.3d 736, 742 (Mo.App. S.D. 2004).

one incident. And that incident did not happen." Defense counsel specifically relied on the amended timeline in accord with the defense trial strategy (that Victim was not credible, and the abuse never happened):

> [Victim] testified on the stand today and was asked the question three times and she said this happened after my mother died. That's very convenient. Because it certainly doesn't make sense that it happened before her mother died.
>
> Yet on the CAC video again six days after she made her initial disclosure she says this happened before my mother died. She's very adamant about that.
>
> She talks about details. She talks about my mother was snoring in the other room. I could hear her.
>
> Those two things don't add up. She was positive on the stand today -- three times positive -- that this happened after her mother died.
>
> . . . .
>
> [T]he details that [Victim] gave you today about when this happened, how this happened, are different from what she said when she is interviewed by [the CAC].

Lambert's planned defense strategy was still viable (if not materially aided) by the amended information.

Moreover, Lambert's brief does not direct this Court to "substantial evidence" in the record of a planned alibi defense. *See Seeler*, 316 S.W.3d at 926. While defense counsel made oral representations to the trial court with respect to alibi witnesses potentially made pertinent by the new charging timeline, defense counsel's unverified submissions and unsworn representations are not evidence. *State v. Williams*, 623 S.W.2d 552, 554 (Mo. banc 1981).[7] By contrast, defense

---

[7] *See State v. Hooper*, 552 S.W.3d 123, 130 (Mo.App. S.D. 2018) ("Neither the trial court below, nor this Court on review, are authorized to consider defense counsel's unsworn representations[.]"). When our Supreme Court reversed on relevant grounds in *Seeler*, 316 S.W.3d 920, the Court perfunctorily noted what Seeler "says his defense strategy" was, but directs its analysis at the record: (1) the evidence adduced by defense counsel in questioning witnesses; (2) on-the-record argument regarding his motion for dismiss; and (3) the documents submitted by defense counsel at trial, as relevant to the development of an underlying strategy. *Id.* at 926-27. In other words, defense strategy is not evinced directly (*i.e.*, by defense counsel's unsworn representations what his strategy is, would, or could have been),

counsel's judicial admissions are binding[8] with respect to the following: (1) "[o]ur defense in this case is that this did not happen[]"; and (2) "I recognize that there is not a defensive alibi or justification being presented."

In light of defense counsel's admissions, the trial court (and this Court) are bound to accept that the new timeline in the State's amended information did not prejudice a planned alibi defense. Lambert's actual planned defense—that the abuse "did not happen"—was significantly aided (and not prejudiced) by Victim's inconsistent timeline. Lambert fails to demonstrate that the trial court's grant of the State's request to amend the timeline in the information prejudiced Lambert's substantial rights.[9] *Seeler*, 316 S.W.3d at 926. Lambert's point is therefore denied.

The judgment of the trial court is affirmed.

WILLIAM W. FRANCIS, JR., J. – OPINION AUTHOR

GARY W. LYNCH, P.J. – CONCURS

NANCY STEFFEN RAHMEYER, J. – CONCURS

---

but rather by defense counsel's development of the case on the record. *Also see*, *State v. Folson*, 197 S.W.3d 658, 661-62 (Mo.App. W.D. 2006).

[8] *Miller v. State*, 558 S.W.3d 15, 21 (Mo. banc 2018) ("A stipulation of counsel, deliberately wrought and given effect, binds not only the client but—as the orderly administration of justice demands—is given credit by the court of review.") (internal quotation and citation omitted).

[9] In seeking to demonstrate prejudice, Lambert directs this Court to *State v. Scott*, 943 S.W.2d 730 (Mo.App. W.D. 1997) and *State v. Rushing*, 232 S.W.3d 656 (Mo.App. S.D. 2007). The holding in *Scott*, as relevant here, dealt with an intentional effort by the prosecutor to withhold evidence to which defendant was entitled, and where "[t]he state's strategy to surprise was obvious." 943 S.W.2d at 737. There is no indication in the record, and no allegation that the State intentionally withheld information from Lambert during discovery in the instant matter—as such, *Scott* is inapplicable. In *Rushing*, the victim of sex abuse "disclosed new allegations of sexual abuse on a date never previously mentioned[]" to the prosecutor "during a witness preparation meeting" before trial. 232 S.W.3d at 658. The trial court in *Rushing* errantly granted the State's request for a protective order, which prevented defendant from deposing Victim on the new allegations such as to prepare a defense before trial. Lambert fails to demonstrate that the interests and analytical features concerning discovery violations, as in *Rushing*, are applicable to the facts of the instant case (dealing with a request to amend information at trial, where defendant's planned defense is not prejudiced).

9